## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JAMES ALBERT MOORE, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | 1:07-cv-033-LJM-WTL |

### ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW

James Albert Moore ("Moore") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. BACKGROUND

Moore filed applications for DIB and SSI on August 19, 2005, alleging an onset date of disability of June 10, 2005. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on April 24, 2006. Moore was present, accompanied by his attorney. Medical and other records were introduced into evidence, and Moore, a medical expert and a vocational expert testified at the hearing. The ALJ issued a decision on June 22, 2006, denying benefits. On December 1, 2006, the Appeals Council denied Moore's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Moore met the insured status requirements of the Act through June 30, 2009; (2) Moore had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) Moore had the following "severe" impairments: cervical, thoracic and lumbar disc disease as well as borderline intellectual functioning; (4) Moore did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Moore had the residual functional capacity ("RFC") to perform light work, as he could sit for six hours during an eight-hour day, stand for eight hours, and walk for eight hours, could lift and carry twenty pounds occasionally and ten pounds frequently, but could not tolerate concentrated exposure to vibration, and was restricted to performing simple, repetitive tasks; (6) Moore was unable to perform any past relevant work; (7) Moore was born on October 25, 1965, and was a younger individual, he had at least a high school education and was able to communicate in English; (8) transferability of job skills was not an issue in this case because Moore's past relevant work was unskilled; and (9) considering Moore's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Moore could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Moore had not been under a "disability" as defined in the Act from June 10, 2005, through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§

404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that Moore had "severe" impairments consisting of cervical, thoracic and lumbar disc disease and borderline intellectual functioning, but that he could perform a significant number of light exertional jobs, and therefore, was not disabled. Moore argues that the ALJ's decision is not supported by substantial evidence. Specifically, Moore contends that the ALJ failed to properly analyze Moore's low IQ in relation to Listing 12.05, the decision mischaracterized the evidence and was based on an incomplete record, the ALJ failed to articulate a function-by-function assessment of Moore's RFC, and the ALJ ignored the law that a claimant must not only obtain but be able to keep a job.

Listing 12.05C contains the following criteria:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
\* \* \*
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

The introductory paragraph of Listings 12.00 (Mental Disorders) states as follows:

The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also

>contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. . . . For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.[1]

The ALJ discussed Moore's psychological impairment and concluded that his borderline intellectual functioning did not meet or equal Listing 12.05C. (R. at 20-21). The ALJ noted the intelligence testing and Moore's IQ test scores of verbal 71, performance 73, and full scale 69. (R. at 20). The ALJ noted that Moore had been diagnosed as having borderline intellectual functioning, not mental retardation. *Id.* The ALJ also concluded that Moore's actual performance at school, his activities of daily living, and his work record demonstrated a capability of effective performance. *Id.*

Moore argues correctly that he is not required to be formally diagnosed with mental retardation to satisfy Listing 12.05C. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570-71 (7th Cir. 2003). Whether or not a claimant is labeled "mentally retarded" is not dispositive, however, he must satisfy the diagnostic description for mental retardation contained in the regulations.

The introductory diagnostic description for mental retardation, which Moore must satisfy, is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Moore argues that the ALJ should have presumed that Moore's previous receipt of Social Security benefits as a child was based on a determination that Moore was mentally retarded. Moore did not present evidence of his prior eligibility, nor did he request that the ALJ locate such records. Evidence of the basis upon which Moore received benefits as a child is not part of the record, nor can it be presumed.

The ALJ discussed the psychological examination conducted by Dr. Davidson, who made a diagnosis of borderline intellectual functioning. (R. at 20). In addition to noting the

---

[1]The Seventh Circuit has stated that after the regulations were revised in 2001, a "dual requirement" was introduced. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570-71 (7th Cir. 2003) (in 2001, "the regulations introduced a new, dual requirement"); *Scott v. Barnhart*, 297 F.3d 589, 595-96 n.6 (7th Cir. 2002) ("Thus, in 1996, the regulations did not require that a claimant meet the diagnostic definition of the listing as well as one of the six sets of criteria to establish disability. Indeed, this dual requirement first appears in the Code of Federal Regulations during 2001.").

diagnosis of borderline intellectual functioning, the ALJ discussed Moore's level of adaptive functioning. The term "deficits in adaptive functioning" as used in the introductory paragraph of Listing 12.05 denotes an "inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). The ALJ discussed the fact that Moore had worked as a dishwasher at a restaurant for 3 years, working 12-hour shifts. (R. at 20). He had also worked for more than six months as a mortuary assistant. *Id.* The ALJ reviewed school records which revealed that Moore had generally earned B's and C's in school, with an occasional D and A. He was assigned to both special education and some non-special classes. *Id.*

The ALJ adopted the opinion of a reviewing State Agency psychologist who concluded that Moore had a mild restriction of activities of daily living, moderate difficulty maintaining social functioning, and moderate difficulty in maintaining concentration, persistence or pace. (R. at 21). In sum, the ALJ adequately explained her rationale for concluding that Moore's mental impairment did not satisfy the criteria of Listing 12.05C, and substantial evidence supports such a finding.

Next, Moore argues that the ALJ mischaracterized the record. He contends that the ALJ's statement that a report indicated that Moore "could walk well without a cane" misstated the record which actually said that Moore could walk without a cane, and that Moore had a slow and very cautious gait.[2] In fact, the ALJ was referencing the testimony of medical expert Dr. Lorber, who in reviewing the evaluation by consulting physician Dr. Kahn, testified that Moore had claimed "he couldn't walk because of ankle problems, but was able to ambulate well without a cane." (R. at 22, citing R. at 558, 179-80). To that extent, the ALJ did not mischaracterize the record of Dr. Lorber's testimony. In fact, when directly discussing Dr. Kahn's report, she indicated that Moore "could walk without a cane." (R. at 21). Although the ALJ did not cite Dr. Kahn's notation that Moore's gait was "slow and very cautious, and it is difficult for him to sustain this," this is not reversible error. (R. at 180). The ALJ cited additional objective findings of Dr. Kahn, many of which were normal. (R. at 21, 180). Dr. Kahn recommended physical therapy for possible alleviation of Moore's symptoms. (R. at 180). The ALJ adequately discussed the findings of Dr. Kahn.

Moore also alleges that the ALJ misstated his grades by reciting that he had received B's and C's with an occasional D and A. (R. at 20). Moore argues that he received nearly twice as many D's as B's. This is not supported by the record. (R. at 458). The ALJ's representation of the report card is not erroneous. For each of these reasons, Moore's claim that the ALJ mischaracterized the record is not persuasive.

---

[2]Moore also alleges that the ALJ misconstrued the record by stating that Moore "transports the [50 pound] bags [of dog food] from the vehicle into his home." (R. at 23). In fact, at the hearing Moore did testify that he dragged the bags of food into the house, that he did not carry them. (R. at 552-53). The ALJ did not misstate the record in this regard.

Moore also argues that the ALJ should have obtained the most recent MRI and other medical records. Moore was represented by counsel at the hearing. Counsel, however, did not ask the ALJ to either obtain these records or to keep the record open to permit counsel to submit them. There is no error under these circumstances.

Moore next contends that the ALJ failed to make a function-by-function assessment of her RFC determination in accordance with Social Security Ruling ("SSR") 96-8p. Moore asserts that the decision fails to adequately articulate his work-related abilities and failed to incorporate his mental impairments in the RFC determination.

Moore suggests that the ALJ's RFC determination was conclusory and lacked proper analysis. SSR 96-8p requires an ALJ to consider the functional limitations that result from a claimant's medically determinable mental and physical impairments in determining his RFC.[3] The ALJ discussed the evidence of record, noting that there were "only scant medical records pertaining to degenerative disc disease since June 10, 2005." (R. at 21). As discussed above, the ALJ noted the findings of Dr. Kahn's consultative examination conducted on September 26, 2005, including negative straight leg raising and no evidence of neural compression. *Id.* The ALJ discussed results of spinal and cervical spine x-rays indicating minor early degenerative changes of the lumbar spine with mild end-plate spurring from T11 through L3 and spondylitic degenerative changes from C7-T1 with disc space narrowing and end-plate osteophytes at C6-7 with mild degenerative changes throughout the thoracic spine. *Id.* The ALJ relied on the testimony of orthopedist Dr. Lorber in finding that Moore did not have an impairment that met or equaled the criteria for any listing. *Id.* The ALJ adopted Dr. Lorber's RFC evaluation which was consistent with the State Agency opinion that Moore could perform light work. (R. at 22).

The ALJ also discussed the psychological consultative examination of September 2005. (R. at 22). The report noted few, if any, clinical signs of severe mental illness. *Id.* The report indicated that Moore had had no mental health treatment as an adult and had not taken any psychiatric medications as an adult. *Id.* The ALJ also reviewed the findings of the State Agency psychological report. (R. at 22-23). The ALJ noted the IQ test scores, the global assessment of functioning of 60, and the fact that Moore lived alone in a house, cleaned house, cooked, shopped, did laundry and dishes, managed his own finances, and was active in his church. *Id.* No line of evidence was ignored. The ALJ accommodated Moore's mental impairment by limiting him to simple, repetitive tasks. (R. at 21). In sum, the ALJ's evaluation of Moore's RFC complied with the requirements of SSR 96-8p and was supported by substantial evidence.

Finally, Moore argues that the ALJ failed to consider the fact that a claimant must not only obtain, but be able to *keep* a job. Moore does not rely on any Seventh Circuit

---

[3] To the extent Moore argues that the ALJ erred at step four of the analysis (Plaintiff's Brief at 14), this argument is misplaced. At step four, the ALJ determined that Moore was not able to perform his past relevant work, and proceeded to consider eligibility at step five. (R. at 24).

precedent for this claim. The factual basis for this argument, moreover, is not well taken. Although Moore argues that he had worked at 17 jobs in 7 years, there is no evidence of the duration of each job or the reasons that each job terminated. The ALJ did not credit Moore's "cursory testimony in response to leading questions" concerning the circumstances under which Moore's jobs ended. (R. at 20). The ALJ also expressly found that Moore's work record showed that he was capable of maintaining employment for a substantial period of time. *Id.* The ALJ acknowledged the fact that Moore had been able to work as a dishwasher, which also required performing light janitorial work, for three years working 12-hour shifts which "demonstrates reliability, self-discipline, and persistence." *Id.* She further noted that Moore had worked more than six months as a mortuary assistant. *Id.* These findings are supported by substantial evidence.

The ALJ concluded that Moore had the RFC to perform light exertional work with no concentrated exposure to vibration and only simple repetitive tasks. (R. at 21). As discussed above, the ALJ adequately reviewed the medical evidence and opinions of record. The ALJ also properly weighed Moore's credibility, finding him generally credible, but noting that some of his allegations of severe pain and limitations of movement were not consistent with the medical records or with his own behavior. (R. at 23). Moore applied for jobs while he received unemployment benefits for 6 months after his alleged onset date, which the ALJ reasoned was inconsistent with his contention that he was unable to work during that period. *Id.* The ALJ relied on testimony of a vocational expert in finding that Moore could perform a significant number of jobs in the national economy. (R. at 24).

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). The ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). As is the case here, an "ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007).

In determining Moore's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Moore's age, education, and work history; (2) Moore's history of diagnoses, treatment, and evaluations; (3) Moore's own account of his conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Moore, a medical expert and a vocational expert. There was substantial evidence to support the ALJ's determination that Moore was not disabled as defined in the Act at any time through the date of the ALJ's decision.

## III. CONCLUSION

There was no reversible error in the assessment of Moore's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Moore is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/14/2008

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana